IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WEST COAST DISTRIBUTING, INC., | : | CIVIL ACTION NO. **3:CV-09-1323** |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Magistrate Judge Blewitt |
| | : | |
| PREFERRED PRODUCE & FOOD | : | |
| SERVICE, INC., *et al.*, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM AND ORDER

### I.    BACKGROUND.

On July 10, 2009, Plaintiff, West Coast Distributing, Inc. ("WCD" or "Plaintiff"), a corporation engaged in the business of buying, selling, and transporting wholesale quantities of fresh fruit and vegetables in interstate commerce with its principal place of business in Malden, Massachusetts, filed this action, through counsel, pursuant to the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, *et seq.* ("PACA"). (Doc. 1). Plaintiff paid the filing fee. This Court has jurisdiction over this action pursuant to 7 U.S.C. § 499e(c)(5), 28 U.S.C. § 1331, and 28 U.S.C. § 1337(a). *See Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 138 (3d Cir. 2000). Additionally, pursuant to doctrine of pendent jurisdiction, this Court has jurisdiction over Plaintiff's claims arising under state law, as any state law claims derive with the federal claims from "a common nucleus of operative fact." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

On December 9, 2009, Plaintiff filed an Amended Complaint ("Amended Complaint"). (Doc. 24). In its Amended Complaint, Plaintiff named as Defendants: Preferred Produce & Food

Service, Inc. ("Preferred" or "Corporate Defendant"); Phillip Abdalla; Maurice J. Abdalla; Maurice Abdalla (collectively, "Abdalla Defendants"); John Cooper; Paul Cooper; and Angela Cooper (collectively, "Cooper Defendants"). (Doc. 24, pp. 2-3).

Defendant Maurice Abdalla, Defendant Phillip Abdalla, and the Cooper Defendants each filed separate Motions to Dismiss (Docs. 26, 34, 46, respectively) between December 2009 and March 2010.

On April 16, 2010, we issued a Report and Recommendation ("R&R") recommending that the Individual Defendants' Motions to Dismiss be granted with respect to Count IV of Plaintiff's Amended Complaint and that Plaintiff's claims against the Individual Defendants for breach of fiduciary duties under PACA be dismissed with prejudice because they were time-barred. (Doc. 52). We further recommended that the Individual Defendants' Motions to Dismiss be denied with respect to Counts III and V of Plaintiff's Amended Complaint. (Doc. 52). On June 29, 2012, this Court issued a Memorandum and Order that adopted our R&R. (Doc. 56).

Subsequently, the Individual Defendants filed Answers to Plaintiff's Amended Complaint with Affirmative Defenses as well as Cross-Claims and Counter Claims. (Docs. 61, 63, 66-68). In the Answer to Plaintiff's Amended Complaint with Affirmative Defenses and Cross-Claim against Cooper Defendants filed by Defendant Phillip Abdalla, he requested a jury trial. (Doc. 63). Also, Answers to the Cross-Claims and Counter Claims Abdalla Defendants and Cooper Defendants raised against each other, with Affirmative Defenses, were also filed by Defendants. (Docs. 94-97). Specifically, Abdalla Defendants and Cooper Defendants filed Cross-Claims and Counter Claims against each other which were raised in their respective Answers to

2

Plaintiff's Amended Complaint. (Docs. 61, 63, 66, 67 & 68).

On September 9, 2010, Plaintiff filed with the Clerk of Court a Request for Entry of Default Judgment as against Defendant Preferred pursuant to Federal Rule of Civil Procedure 55(a). (Doc. 83). The following day, the Clerk entered Default as against Defendant Preferred pursuant to Rule 55(a). (Doc. 84).[1]

On September 30, 2012, we issued an R&R wherein we recommended that Plaintiff's August 27, 2010, Motion for Default Judgment against Defendant Preferred (Doc. 73) be granted and that Defendant Phillip Abdalla's Request for Hearing (Doc. 77) be denied. (Doc. 90). We further recommended that the District Court direct the Clerk of Court to enter default judgment as against the Corporate Defendant pursuant to Rule 55(b)(1) because Plaintiff's claim against it was for a sum certain. (Doc. 90).[2] We also recommended that this matter be remanded to the undersigned for further proceedings. (Doc. 90). No party filed objections to our R&R.

While the Doc. 90 R&R was pending before the District Court, the parties consented to

---

[1]The applicable Rule reads: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).

[2] Rule 55(b)(1) reads:

If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

Fed. R. Civ. P. 55(b)(1).

the jurisdiction of the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 99).[3]

On May 20, 2011, the District court ordered that Plaintiff's Motion for Default Judgment against the Corporate Defendant be granted but that Defendant Phillip Abdalla's Request for Hearing be denied. (Doc. 101). The Court directed the clerk to enter Default Judgment pursuant to FRCP 55(b)(1). (Doc. 101). On May 26, 2011, the Default Judgment was entered by the Court against the Corporate Defendant in the amount of $189,673.75.[4] (Doc. 104).

On November 15, 2011, Defendant Phillip Abdalla filed a Motion for Summary Judgment with six (6) attachments, alleging that Plaintiff's claims against him were barred by a 2-year statute of limitations and by the doctrine of accord and satisfaction. (Doc. 105). With his Motion, Defendant Phillip Abdalla also submitted an Affidavit in Support with four (4) attachments and a Statement of Material Facts with four (4) attachments. (Docs. 106, 107, respectively). Additionally, Defendant Phillip Abdalla filed a Brief in Support of his Motion. (Doc. 108).

On December 27, 2011, Plaintiff filed an Answer to Defendant Phillip Abdalla's Statement of Material Facts and a Brief in Opposition to the Doc. 105 Motion. (Docs. 114, 115, respectively).

Two days thereafter, on December 29, 2011, the Cooper Defendants filed a Cross-Motion for Summary Judgment with one (1) attachment, and Affidavit in Opposition of Defendant Phillip Abdalla's Motion for Summary Judgment with two (2) exhibits, a Statement of

---

[3] Previously, the undersigned was assigned this case for only pre-trial matters.

[4] Plaintiff represents that the Default Judgment entered by the Court against the Corporate Defendant has not been paid. (Doc. 156-4, p. 2).

Facts, and a Brief in Support of the Cross-Motion. (Docs. 116, 117, 118, 119, respectively).

On January 5, 2012, Defendant Phillip Abdalla filed a Reply Brief in Support and an Affidavit in Support of both Motions for Summary Judgment. (Docs. 121, 122, respectively). On March 6, 2012, Defendant Phillip Abdalla filed a Response to the Cooper Defendants' Statement of Facts with two (2) exhibits and a Brief in Opposition to the Cooper Defendants' Cross-Motion. (Docs. 133, 134, respectively).

On March 28, 2012, Plaintiff filed a Response to the Motions for Summary Judgment with two (2) exhibits, including an Affidavit of Defendant Angela Cooper. (Doc. 140). Plaintiff additionally filed on March 28, 2012, a Brief in Response to the Motions for Summary Judgment wherein it claimed that Defendant Abdalla's Motion was irrelevant and requested oral argument on all pending motions. (Doc. 141).

On April 18, 2012, the Cooper Defendants filed a Reply Brief to the filings of Defendant Phillip Abdalla and Plaintiff regarding the Motions to Dismiss with two (2) exhibits, including a Supplemental Affidavit of Defendant Angela Cooper. (Doc. 142).

On June 25, 2012, this Court directed that oral argument on the Motions for Summary Judgment (Docs. 105, 116) would take place on July 3, 2012, at 10:00am. (Doc. 149).

On July 2, 2012, the undersigned ordered that this action be dismissed with respect to Plaintiff's claims against the Cooper Defendants, as the matter had been settled regarding those claims. (Doc. 150). Pending resolution of the remaining claims and cross-claims, however, this action remained open. (Doc. 150).

On July 3, 2012, the parties presented oral argument on the Motions for Summary

Judgment before the undersigned. During the proceeding, counsel for Defendant Phillip Abdalla withdrew on the record his Doc. 105 Motion for Summary Judgment. (Docs. 151, 152). This Court found the Cooper Defendants' Doc. 116 Cross-Motion for Summary Judgment moot, as those Defendant had settled with Plaintiff. (Docs. 151, 153). Further, the Court agreed with the Abdalla Defendants' assertion that they were not on notice that the Cooper Defendants were similarly moving against them for summary judgment in said Motion. (Docs. 151, 153). The Court also denied Plaintiff's request to orally move for summary judgment as against the Abdalla Defendants and directed Plaintiff to file a new summary judgment, out of time, against these Defendants. (Docs. 151, 154). The Court similarly afforded the Cooper Defendants leave to file a summary judgment motion out of time regarding their cross-claims against the Abdalla Defendants. (Docs. 151, 154). Both Plaintiff and the Cooper Defendants were ordered to file their respective summary judgment motions within ten (10) days of the July 3, 2012, order. (Doc. 154).

On July 13, 2012, the Cooper Defendants filed a Cross-Motion for Summary Judgment with respect to the Cross-Claims they filed against the Abdalla Defendants. **(Doc. 155).** The Cooper Defendants attached their Statement of Facts and the Affidavit of Angela Cooper to their Motion. On July 27, 2012, the Cooper Defendants filed their Brief in support of their Cross-Motion for Summary Judgment as against the Abdalla Defendants with Exhibits. (Doc. 159).

Also, on July 13, 2012, Plaintiff filed a Motion for Summary Judgment as against the Defendants Phillip and Maurice Abdalla. **(Doc. 156).** Plaintiff attached its Statement of Facts and the Affidavit of its counsel to their Motion. Further, Plaintiff filed the Declaration of Angela Cooper with attached Exhibits and its support Brief. (Docs. 157 & 158). Plaintiff seeks the Court

6

to enter judgment against Defendants Phillip and Maurice Abdalla with respect to its remaining Counts III and V of its Amended Complaint (Doc. 24), in which Plaintiff sought a declaration of constructive and/or substituted trust, and disgorgement by Defendants Phillip and Maurice Abdalla of PACA Trust assets they received from Defendant Preferred. Specifically, in its Doc. 156 Summary Judgment Motion, Plaintiff seeks judgment against Defendants Phillip and Maurice Abdalla and an order directing them to disgorge, restore, and/or repay the PACA Trust assets they received from the assets held in trust under the PACA by Defendant Preferred.

On August 2, 2012, Defendant Phillip Abdalla filed his opposition Brief to Plaintiff's Motion for Summary Judgment with attached Exhibits. (Doc. 160). On August 3, 2012, Defendant Maurice Abdalla filed his opposition Brief to Plaintiff's Motion for Summary Judgment with attached Exhibits. (Doc. 162). Defendant Maurice Abdalla essentially incorporates the opposition Brief of Defendant Phillip Abdalla. On August 16, 2012, Plaintiff filed its Reply Brief to Defendant Phillip Abdalla's opposition Brief with an Attachment. (Doc. 164). On August 17, 2012, Plaintiff filed its Reply Brief to Defendant Maurice Abdalla's opposition Brief with an Attachment. (Doc. 169).

On August 17, 2012, Defendant Phillip Abdalla filed his opposition Brief to Cooper Defendants' Cross Motion for Summary Judgment with attached Exhibits. (Doc. 165). On August 17, 2012, Defendant Maurice Abdalla filed his opposition Brief to Cooper Defendants' Cross Motion for Summary Judgment with attached Exhibits. (Doc. 167). On August 30, 2012, Cooper Defendants filed their Reply Brief in support of their Cross Motion for Summary Judgment against the Abdalla Defendants. (Doc. 170).

Thus, both Plaintiff's **Doc. 156** Motion for Summary Judgment against Defendants Phillip

and Maurice Abdalla and Cooper Defendants' **Doc. 155** Cross Motion for Summary Judgment against Defendants Phillip and Maurice Abdalla are ripe for disposition. Additionally, the parties have requested a jury trial in their filings regarding the two pending dispositive motions.

On August 30, 2012, Plaintiff and Cooper Defendants filed their Settlement Agreement resolving all claims between them in this case. (Doc. 171). On August 31, 2012, Plaintiff and Cooper Defendants filed their Stipulation of Dismissal pursuant to Fed.R.Civ.P. 41(a)(1)(A) and Approval of Settlement Agreement. (Doc. 172). On September 4, 2012, the Court approved of the Settlement Agreement between Plaintiff and Cooper Defendants, which dismissed Plaintiff's claims as against Cooper Defendants. (Doc. 173).

Also, as stated, on May 26, 2011, the Court has entered Default Judgment in Plaintiff's favor and against Defendant Preferred Produce & Food Service, Inc. ("Corporate Defendant" or "Preferred"), in the amount of $189,673.65 plus attorney's fees. (Doc. 104). To date, this Judgment has not been paid. Further, this Judgment has not been subject to a Motion under Fed.R.Civ.P. 59 or under Fed.R.Civ.P. 60. Nor has this Judgment against Defendant Preferred been overtured on appeal as Plaintiff points out, and the time in which to file such an appeal has expired. (Doc. 164, pp. 2-3). Thus, insofar as Abdalla Defendants now attempt to raise arguments, including lack of due process, regarding the Default Judgment entered against Defendant Preferred and to revisit this Judgment, the Court shall not consider such arguments.[5]

---

[5]The Court notes that the Abdalla Defendants, both former officers of the Corporate Defendant (Preferred), lack standing to raise civil rights claims, including a due process claim, allegedly suffered by the Defendant Preferred, a corporation. *See Diva, Inc. v. City of Bangor*, 176 F.Supp.2d 30 (D.Me. 2001); *Marty's Adult World of New Britain v. Guida*, 453 F.Supp. 810 (D.Conn. 1978); *Grimm v. Bor. of Norristown*, 226 F.Supp.2d 606, 631-632 (E.D. Pa. 2002)(citations omitted) Order amended in part on other grounds, 202 WL 737497 (E.D. Pa. March 11, 2002). Rather, Defendant Preferred has "standing to bring constitutional claims on

## II.    SUMMARY JUDGMENT STANDARD.

A motion for summary judgment may not be granted unless there is not genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the suit. *Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004). The moving party may demonstrate that no genuine dispute as to any material fact exists by citing to pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. Fed. R. Civ. P. 56(c). The reviewing court may consider any materials in the record in determining whether there exists a genuine issue of material fact. Fed. R. Civ. P. 56(c)(3). An issue of fact is "'genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving lack of genuine issue of material fact is initially on the moving

---

its own behalf and is a person within the meaning of the Fourteenth Amendment." *MFS, Inc. v. DiLazaro*, 771 F.Supp.2d 382, 441 n. 57 (E.D. Pa. 2011)(citing *Addiction Specialists, Inc. v. The Township of Hampton*, 411 F.3d 399, 407 n. 6 (3d Cir. 2005)).   In our case, Defendant Preferred did not have its own counsel represent it as required in federal court. *See Colavita v. Ryan*, 2010 WL 2164522, *2 (E.D. Pa. May 27, 2010)("it is well-settled law that corporations cannot appear *pro se* in the federal courts.")(citation omitted).  Also, "a corporation may appear in the federal courts only through licensed counsel." *Id*.(citation omitted).  Thus, Abdalla Defendants on their own could not represent the Corporate Defendant in this action, and counsel for Abdalla Defendants did not enter their appearance for Defendant Preferred.  As such, the Court will not now consider any challenge by the Abdalla Defendants to the Default Judgment entered against Defendant Preferred.

party. *Childers*, 842 F.2d at 694 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The burden of proof shifts to the nonmoving party, however, when the moving party demonstrates no such genuine issue of fact. *Forms, Inc. v. Am. Standard, Inc.*, 546 F. Supp. 314, 321 (E.D. Pa. 1982), *aff'd. mem.*, 725 F.2d 667 (3d Cir. 1983). The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

In determining the existence of an issue of material fact, the reviewing court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). As such, the court must accept the nonmoving party's allegations as true and resolve any conflicts in his or her favor. *Id.* (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied*, 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038 (1977)).[6]

"Material facts" are those which might affect the outcome of the suit. *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004).

## III. ALLEGATIONS OF AMENDED COMPLAINT.[7]

---

[6]*See also Allen v. Fletcher*, Civil Action No. 3:07-0722, 2009 WL 1542767, at *2 (M.D. Pa. June 2, 2009)(outlining the summary judgment standard).

[7]We cabin our discussion of Plaintiff's allegations in its Amended Complaint to the two remaining claims against Abdalla Defendants, namely, Counts III and V.  As mentioned, Plaintiff

Plaintiff averred that between July 1, 2005 and July 13, 2005, it sent Defendant Preferred, *via* interstate commerce, "pursuant to partly oral and partly written, delivered price-after-sale contracts," three shipments of fresh grapes. (Doc. 24, p. 4, ¶ 9.). Plaintiff averred that it shipped Defendant Preferred the type and quantity of grapes called for in the contracts, and that its grapes were delivered to and accepted by Defendant Preferred after they were federally inspected and met the applicable USDA grade and conditions. Plaintiff stated that under the price-after-sale contracts it had with Defendant Preferred, which were issued under the PACA, "Defendants were required to promptly sell Plaintiff's grapes at prices reflecting both the prevailing market prices and the quality of the grapes at time of delivery to Defendant [Preferred]." (*Id.*, ¶ 12.).[8] Specifically, Plaintiff's first Invoice (#W52043A) indicated that Defendant Preferred ordered 2070 cartons containing 18 lb. bags of white grapes on June 27, 2005, and that they were shipped that same day to Defendant Preferred. The Sale Term was "Price After." (Doc. 2, p. 3). The Pay Term on the Invoice was "N10," which Defendants indicate is an abbreviation for "Net 10 days." In fact, Plaintiff averred that Defendant Preferred was required to sell Plaintiff's grapes at the prevailing market price and to then pay that price to Plaintiff within 10 days. (Doc. 24, p. 5, ¶ 15.). Plaintiff's second Invoice (#W52137A) indicated that Defendant Preferred ordered 2040 cartons containing 18 lb. bags of white grapes on July 6,

---

settled its claims against Cooper Defendants.

[8]Plaintiff referred to "Defendants" in its ¶ 12. of its amended pleading but it failed to specify which other Defendants in addition to Preferred it is claiming breached the price-after-sale contracts it had with Preferred under the PACA. We found that Counts I and II of Plaintiff's Amended Complaint were only against Defendant Preferred and not against the Individual Defendants. In any event, the Court has entered Default Judgment as against Defendant Preferred.

2005, and that they were shipped that same day to Defendant PPFS. The Sale Term was "Price After." The Pay Term on the Invoice was "N10." (Doc. 2, p. 1). Plaintiff's third and final Invoice (#W52183A) indicated that Defendant Preferred ordered 1540 cartons containing 18 lb. bags of red grapes on July 7, 2005, and that they were shipped that same day to Defendant Preferred. The Sale Term was "Price After." The Pay Term on the Invoice was "N10." (Doc. 2, p. 2).[9]

Plaintiff stated that based on the average market price for grapes at the relevant time of its shipments to Defendant Preferred, its grapes had a total market value of $118,240.00. (Doc. 24, p. 5, ¶ 14.).

In Count III, Plaintiff alleges that any personal assets which the Individual Defendants commingled with the PACA Trust res held by Defendant Preferred for its (Plaintiff's) benefit constitutes a substituted, resultant trust res for its (Plaintiff's) benefit. (Id., pp. 7-8).

Plaintiff's final claim is Count V which alleges that the Individual Defendants illegally transferred the assets which Defendant Preferred held in trust for it (Plaintiff) under the PACA to themselves or others. (Id., p. 9). Plaintiff demands an accounting and return of all assets which the Individual Defendants acquired with the proceeds they allegedly took from Defendant Preferred when Plaintiff's grapes were sold, and Plaintiff demands that the Court direct the Individual Defendants to hold such assets in constructive trust for its benefit. (Id.).

As relief, Plaintiff seeks, in part, $94,592.00 in compensatory damages as well as declaratory judgment that Defendants violated the PACA, and that all Defendants be held jointly, severally and individually liable to it for its losses. (Id., p. 10).

---

[9]We consider the copies of the three Invoices Plaintiff previously submitted.

As stated, only Plaintiff's Count III and Count V of its Amended Complaint as against the Abdalla Defendants remain. Plaintiff and Cooper Defendants have fully and finally settled their respective claims. (Docs. 171-173).

Also, Abdalla Defendants and Cooper Defendants have filed Cross-Claims and Counter Claims against each other which were raised in their respective Answers to Plaintiff's Amended Complaint. (Docs. 61, 63, 66, 67 & 68). Abdalla Defendants claim that Cooper Defendants were "principals of and 'responsibly connected' to [Defendant] Preferred, and operated, managed and controlled [Preferred] at all time pertinent." On July 13, 2012, Cooper Defendants filed a Cross-Motion for Summary Judgment against Abdalla Defendants with respect to their Cross-Claims against Abdalla Defendants. (**Doc. 155**). Cooper Defendants maintain that if Plaintiff establishes it sustained any damages as alleged in its Amended Complaint, then "said damages were caused, in whole or in part, by the Abdallas, and said Defendants are alone liable to [Plaintiff], liable to [Plaintiff] and/or liable to the Copper [Defendants] by way of contribution and/or indemnity." (Doc. 68, p. 13). Cooper Defendants contend that Defendant Phillip Abdalla personally profited from PACA-Protected Trust Funds, and that both Abdalla Defendants received payments from Defendant Preferred in violation of PACA. Cooper Defendants also contend that they did not personally profit from PACA-Protected Trust Funds, and that they are entitled to summary judgment with respect to their Cross-Claims against Abdalla Defendants.[10] Further, Cooper Defendants argue that Abdalla Defendants cannot establish their claims for contribution and/or indemnity which they assert

---

[10]Defendant Phillip Abdalla filed a Summary Judgment Motion against Plaintiff on November 15, 2011 (Doc. 105), but he withdrew it prior to the July 3, 2012 oral argument.

against Cooper Defendants in their [Abdalla's] Cross-Claims. Since Cooper Defendants have now settled with Plaintiff with respect to all of Plaintiff's claims against them, Cooper Defendants' Cross Motion for Summary Judgment against the Abdalla Defendants seeks judgment regarding Abdallas' Cross Claims for contribution and/or indemnity against them (Coopers).

Thus, Cooper Defendants maintain that they are entitled to summary judgment with respect to all of the Cross-Claims Abdalla Defendants have raised against them. (Doc. 170).

## IV. MATERIAL FACTS.

The Court now consider the material facts with respect to Plaintiff's Summary Judgment Motion and its remaining claims against the Abdalla Defendants, *i.e.*, Counts III and V of Plaintiff's Amended Complaint. Additionally, the Court considers the material facts with respect to Cooper Defendants' Cross-Motion for Summary Judgment against Abdalla Defendants.

Plaintiff filed its 11-paragraph Statement of Material Facts ("SMF") with its Summary Judgment Motion (Doc. 156-1) but it is not in conformance with Local Rule 56.1, M.D. Pa., since it does not cite to evidence in the record with respect to each separate paragraph as required. Plaintiff attached the Declaration of its counsel with Exhibits to its SMF. (Doc. 156-2). Plaintiff also submitted the Declaration of Angela Cooper with attached Exhibits in support of its SMF. Defendant Phillip Abdalla filed a response to Plaintiff's SMF as required by Rule 56.1. (Doc. 160-1). Also, he added several supplemental facts in his response. (*Id.*, pp. 7-23). Further, Defendant Phillip Abdalla filed his own Counter Statement of Facts in his opposition brief, Doc. 160, pp. 3-15. Defendant Phillip Abdalla filed Exhibits in support of his facts.

14

(Docs. 160-2 through 160-4).

Defendant Maurice Abdalla did not file his own separate response to Plaintiff's SMF. Rather, Defendant Maurice Abdalla adopted the response and opposition brief filed by Defendant Phillip Abdalla. (Doc. 162, p. 1 & 162-2). Also, Defendant Maurice Abdalla filed his own opposition brief with his attached Affidavit as well as his own Exhibits. (Docs. 162 and 162-1).

As stated, Plaintiff filed its reply brief to Defendant Phillip Abdalla's opposition brief as well as its reply to Phillip Abdalla's Counter SMF in which it asserts, for the most part, that Phillip Abdalla's Counter SMF are irrelevant. (Doc. 164 & 164-1).

Based on the Plaintiff's SMF, Cooper Defendants' SMF, Abdalla Defendants' responses to them, Defendant Abdallas' Counter SMF, and the substantial evidence submitted by the respective parties, the Court agrees with Abdalla Defendants and finds that there are several disputed issues of material facts in this case. Thus, the Court finds that Plaintiff is not entitled to entry of summary judgment with respect to Counts III and V of its Amended Complaint as against Abdalla Defendants, and that Cooper Defendants are not entitled to summary judgment with respect to its Cross Claims against Abdalla Defendants.

The parties dispute who was in control of Defendant Preferred during the relevant times of this case, basically from July 1, 2005 through 2006. Defendant Preferred received the first shipment of grapes from Plaintiff on July 1, 2005. Abdalla Defendants state that Cooper Defendants owned the controlling interest in Defendant Preferred during the relevant times and that Cooper Defendants exercised complete control over Preferred including Preferred's cash, accounts, payroll, bookkeeping and accounting functions. Abdalla Defendants also state that

any of their salary payments prior to July 1, 2005, are not relevant to this case, and that they both were employed and paid by Coopers Food Service, Inc. We agree with Abdalla Defendants that any of their salary payments prior to July 1, 2005, are not relevant to this case since they were made prior to Plaintiff's first shipment of grapes to Defendant Preferred. However, insofar as the salary payments to Abdalla Defendants that were made prior to July 1, 2005, provide the background of how the Abdallas were paid by Defendant Preferred in 2005, we will consider these payments.

As stated, Plaintiff submitted the Declaration of Angela Cooper with attached Exhibits in support of its Summary Judgment Motion. (Doc. 157). Angela Cooper avers that the Abdalla Defendants, as Officers of Defendant Preferred, were paid $2000 per week in 2004 and 2005 and that the Cooper Defendants did not receive any compensation for either year. Angela Cooper avers that Defendant Phillip Abdalla was paid $104,000 in 2005 and that Defendant Maurice Abdalla was paid $52,000 for the 26 weeks in which he was employed by Defendant Preferred in 2005 until the end of July 2005. (Doc. 157, pp. 1-2). Angela Cooper's averments are supported by evidence, namely, the Pro-Forma Statements of Income and Expenses that formed the basis of the Cooper Defendants' involvement with Defendant Preferred, attached to Angela Cooper's Affidavit as Exhibit A.

Angela Cooper avers that the Coopers created a separate and distinct account and payroll under the name Cooper's Food Service, Inc., through which Defendant Preferred's employees, including the Abdalla Defendants, were paid. Further, Angela Cooper avers that all monies in that account under the name Cooper's Food Service, Inc., came from Defendant Preferred and were proceeds derived from Preferred's sale of produce. Angela Cooper avers

that, as confirmed by Preferred's payroll records attached to Angela Cooper's Declaration as Exhibit B, the Abdalla Defendants were paid employees of Defendant Preferred during the acts complained of in Plaintiff's Amended Complaint. Angela Cooper avers that the Cooper Defendants were not identified as paid employees of Defendant Preferred during the relevant time frame. Angela Cooper avers that Defendant Phillip Abdalla was also paid $4000 in salary in January 2006, before Defendant Preferred closed. The Court finds that Defendant Preferred's payroll records attached to Angela Cooper's Declaration as Exhibits B, C and D show that the amounts indicated by Angela Cooper in her Declaration that were paid to Abdalla Defendants are true and correct.

Angela Cooper avers that in addition to their salaries of $2000 per week, the Abdalla Defendants also received other payments from Defendant Preferred, including the $855 per month which Maurice was paid in 2005 for his personal car payments, totaling $10,260. Angela Cooper avers that Defendant Phillip Abdalla also received additional payments from Defendant Preferred and, that he was paid $14,298 on July 6, 2005, $8,183.35 on July 11, 2005, and $3,173 on August 10, 2005. Angela Cooper concludes that all of the funds in Defendant Preferred's accounts were derived from its sales of produce, and that the additional monies paid to the Abdalla Defendants were paid from the proceeds of Preferred's produce sales. Thus, Angela Cooper avers that the evidence she submitted indicates that payments and benefits were provided by Defendant Preferred to the Abdalla Defendants, and not to the Cooper Defendants, during the time periods relevant to litigation.

Cooper Defendants state that both they and Plaintiff have submitted evidence which has not been disputed showing Defendant Preferred made payments totaling $142,918.00 to

Defendant Phillip Abdalla and totaling $64,260.00 to Defendant Maurice Abdalla from PACA trust assets during the relevant time of this case.

The Court finds that Defendant Preferred's payroll records attached to Angela Cooper's Declaration as Exhibits B, C, D and E show that the amounts Angela states in her Declaration were paid to Abdalla Defendants are true and correct. The Court also finds that Angela Cooper's Declaration shows that the above stated payments and benefits were provided by Defendant Preferred to the Abdalla Defendants, and not directly to the Cooper Defendants during the relevant times of this case. Further, the Court finds that Angela Cooper's Declaration shows that Defendant Preferred made payments to Phillip Abdalla in the amount of $133,654.35 and to Maurice Abdalla in the amount of $62,260.00. However, as Plaintiff points out, Maurice Abdalla admitted in his Affidavit that during 2005, he received wages of "$64,000 from Cooper Service, Inc." (Doc. 162-1, p. 2). Maurice Abdalla also submitted a copy of his W-2 for 2005 indicating that his wages were $64,000. (Id., p. 5). As such, the Court will use the amount stated by Maurice Abdalla in his Affidavit.

In the July 13, 2012 Declaration of Plaintiff's counsel attached to Plaintiff's Summary Judgment Motion, Doc. 156-2, Attorney Mandell avers that Plaintiff's evidence shows that the above stated monies Abdalla Defendants received were derived from Defendant Preferred's produce operation and that Abdalla Defendants failed to submit any evidence to him during discovery to show that the monies they received were not derived from Defendant Preferred's produce operation. Also, attached as Exhibit A to the Declaration of Plaintiff's counsel, Attorney Mandell, is a copy of a check dated June 23, 2005 from Defendant Preferred to Alex Abdalla in the amount of $11,264.00 endorsed by Defendant Phillip Abdalla. Plaintiff's counsel

18

also shows through his Exhibit A that this money actually went into the personal checking account of Defendant Phillip Abdalla. (Doc. 156-2, pp. 4-6).

Based on Plaintiff's evidence, which we find undisputed, the Court agrees with Plaintiff that the above stated monies Abdalla Defendants received in 2005 and 2006 were derived from Defendant Preferred's produce operation, including the sale of the grapes which Plaintiff shipped to Preferred. We also find that the payments, which were the proceeds of produce, were paid by Defendant Preferred, via Cooper Service, Inc., to the Abdalla Defendants, and not directly to the Cooper Defendants during the time periods relevant to litigation. Thus, as an undisputed material fact with respect to Plaintiff's Motion for Summary Judgment against Abdalla Defendants and with respect to Cooper Defendants' Cross-Motion for Summary Judgment against Abdalla Defendants, the Court finds that the above detailed payments from Defendant Preferred to the Abdalla Defendants were derived from the sales of produce, and that the Cooper Defendants did not directly receive any such payments during the relevant times of this case. Further, the Court agrees with Plaintiff and Cooper Defendants and finds that Defendant Preferred made payments totaling $144,918.35 to Defendant Phillip Abdalla and totaling $64,260.00 to Defendant Maurice Abdalla from PACA trust assets during the relevant times of this case.

Between July 1, 2005, and July 13, 2005, Plaintiff sold the Defendant Preferred three (3) shipments of grapes on a "price-after-sale" basis. When the Defendant Preferred accepted Plaintiff's shipments of grapes, Plaintiff became a beneficiary of the res of assets held by Defendant Preferred pursuant to 7 U.S.C. § 499e(c). One of these three shipments was rejected by Defendant Preferred's customer Giant Food.

19

Defendant Phillip Abdalla alleges that each of Plaintiff's three shipments "was in some state of decay;" however, Plaintiff adamantly denies this assertion and claims that it is contravened by the official USDA inspections of these shipments.

Defendant Phillip Abdalla puts forth several sets of facts in his Counter SMF and Affidavit (Doc. 160-2) that Plaintiff finds to be "irrelevant and immaterial to the issues remaining in this action following entry of judgment against Preferred Produce, Inc." The Court outlines those facts briefly here.

Defendant Phillip Abdalla claims that when the Defendant Preferred received Plaintiff's shipments of grapes, it attempted to sell these grapes in good faith without deceiving customers as to the quality of the grapes. Phillip Abdalla contends that Defendant Preferred's customers had minimal interest in the grapes unless they were deeply discounted. Phillip Abdalla asserts that some of Plaintiff's grapes needed to be disposed of, and that Preferred was forced to reimburse one of its customers for $280.00 for such disposal.

Defendant Phillip Abdalla discussed the outcome of Defendant Preferred's attempts to sell the grapes with Plaintiff's associate Brian Bell ("Bell") prior to sending him "a detailed return for each shipment and related documentation." Phillip Abdalla maintains that Plaintiff then sent three invoices that reflected inflated "price-at-delivery" highest market prices for the best grapes even though all other documentation regarding this matter consistently reflected that all three transactions were "price-after-sale" and that the grapes were not of the best quality. In fact, Defendant Phillip Abdalla states that each of the three shipments received from Defendant Preferred was in some state of decay on arrival on July 1, 12 and 13, 2005. (Doc. 160-2, p. 4-5). In addition to finding these assertions irrelevant and immaterial, Plaintiff states that it is

refuted by the Exhibits attached to Phillip Abdalla's Affidavit which clearly state the sale term as "PRICE AFTER," which is shorthand for Price After Sale. (*See* Doc. 160-2, Exs. A, E & F). Additionally, as stated above, the Sale Term for the three shipments of grapes which Plaintiff sent to Defendant Preferred was undisputedly "PRICE AFTER." The Pay Term on the Invoice was "N10." (*Id*.). Plaintiff's third and final Invoice (#W52183A) indicated that Defendant Preferred ordered 1540 cartons containing 18 lb. bags of red grapes on July 7, 2005, and that they were shipped that same day to Defendant Preferred. The Sale Term was "PRICE AFTER." The Pay Term on the Invoice was "N10." (*Id*.).[11]

Defendant Phillip Abdalla claims that he, on behalf of Defendant Preferred, attempted to contact Plaintiff on more than one occasion following the shipments to discuss the dispute as to the quality of the grapes. Defendant Phillip Abdalla claims that the grapes Plaintiff shipped to Defendant Preferred were rejects, end-of-the-season Mexican grapes and decayed. Nonetheless, Defendant Phillip Abdalla claims that Plaintiff sought payment for its grapes based on the market price for the best U.S. grapes available on the market. Unable to reach Plaintiff's Brian Bell on several occasions, Phillip Abdalla states that he communicated with Plaintiff's Benjamin Foss ("Foss"). Phillip Abdalla states that Foss indicated Plaintiff's documents did not state that the grapes were labeled as price-after-sale and that he would need to speak with Brian Bell about the matter. (Doc. 160-2).

Under direction from the USDA PACA Branch's Acting Regional Director, Basil Coale ("Coale"), Defendant Phillip Abdalla avers that he sent Plaintiff a package with a letter dated

---

[11]As noted above, the Court also considers the copies of the three Invoices Plaintiff previously submitted.

October 12, 2005, that contained Defendant Preferred's invoices, a copy of the accounting regarding the grapes, and net proceeds from the sale of each of the three shipments of the grapes *via* three separate Preferred checks in the amounts of $15,682.72, $9,663.34 and $6,285.56. (Doc. 160-2). Defendant Phillip Abdalla avers that each check he sent Plaintiff stated that "Depositing this check acknowledges payment in full" for each of the three Invoices. Defendant Phillip Abdalla avers that Plaintiff deposited the three checks. (Doc. 160-2 & Ex. G).

Subsequently, Defendant Phillip Abdalla avers that Plaintiff sent Defendant Preferred a back-dated versions of the "concocted" Invoices bearing bogus dates of "June 27, 2005" instead of August 26, 2005." (*Id.*, & Exs. F & H). Then Plaintiff complained to USDA that it was not satisfied with the payment made by Defendant Preferred. Defendant Phillip Abdalla avers that in November 2005, he then sent Coale as USDA a copy of his October 12, 2005 letter to Plaintiff with enclosures and that USDA responded in Defendant Preferred's favor on the matter. (*Id.*).

Defendant Phillip Abdalla avers that on January 13, 2006, Plaintiff wired transferred the $31,631.62 it had received from Defendant Preferred in October 2005 as the net proceeds from the sale of each of the three shipments of the grapes , back to Preferred.

Defendant Phillip Abdalla avers that on August 9, 2005, the parties involved with Defendant Preferred signed an Agreement and  bought out Defendant Maurice Abdalla's interest in Preferred. (*Id.*).  In his Affidavit (Doc. 162-1, p. 3), Defendant Maurice Abdalla also confirms that he agreed to sell his remaining shares of stock in Defendant Preferred to Cooper Defendants, and that an Agreement was executed on August 9, 2005.    A copy of the Agreement is attached to Maurice's Affidavit. (Doc. 162-1, pp. 6-17).   Maurice received

$25,000 for the sale of his Preferred stock to Cooper Defendants. (*Id.*, p. 18). As of August 9, 2005, Defendant Maurice Abdalla states that his employment by Defendant Preferred ended and that he resigned as a Director of Preferred. Also, Maurice states that as of this date, he received no further compensation from Cooper Food Service, Inc. (*Id.*, p. 3).

Defendant Phillip Abdalla avers that Cooper Defendants owned the controlling interest of Defendant Preferred during 2005 and 2006 as reflected in Preferred's corporate tax returns for these yeas. (Doc. 160-2). As such, Defendant Phillip Abdalla avers that after May 8, 2005, he had no authority to write a check on behalf of Defendant Preferred without the approval of Defendant Angela Cooper. He also states that prior to June 2005, Cooper Defendants took over active control of Defendant Preferred in all respects. Then on January 12, 2006, Defendant Phillip Abdalla avers that the Cooper Defendants forced him out of his involvement with Defendant Preferred. Defendant Phillip Abdalla then avers that Defendant Angela Cooper had total control over the $31,631.62 that Plaintiff had wired back to Defendant Preferred and that she put the money into escrow.[12] (*Id.* & Ex. I).

Defendant Phillip Abdalla avers that all relevant times to this case, Defendant Angela Cooper was registered with USDA as the authorized agent of Defendant Preferred. He then states that Cooper Defendants operated Defendant Preferred until about March 2006, and that they later liquidated Preferred's assets.

---

[12]Defendant Phillip Abdalla states that later in 2006, Cooper Defendants and Defendant Preferred sued him in Lackawanna County Court of Common Pleas, 2006 Civil No. 6512, and that the case is still pending.

Defendant Maurice Abdalla avers that during the relevant time when Plaintiff delivered the grapes to Defendant Preferred in July 2005, and the PACA trust arose, there was no disruption of the trust assets from June 30, 2005 until the end of Preferred's third quarter on September 30, 2005. (Doc. 162-1, pp. 2-3). Thus, Maurice concludes that there was "no failure to preserve trust assets before [he] severed all ties with Preferred on August 9, 2005." (*Id.*, p. 4). Maurice Abdalla relies on his Exhibits 5 and 6 attached to his Affidavit which are the Balance Sheets for Defendant Preferred as of June 30, 2005 and September 30, 2005. (*Id.*, pp. 21-24). The Balance Sheets for Defendant Preferred as of June 30, 2005 indicated that it had in excess of $3.6 million in total assets and as of September 30, 2005, it had in excess of $3.8 million in total assets.

Finally, Defendant Maurice Abdalla avers that the $855 per month that he received from Defendant Preferred for an alleged personal car (according to Angela Cooper's Affidavit) was actually for a car leased to Preferred and not to him. Maurice cites to the car's Title and the Lease Agreement attached to his Affidavit for support. (*Id.*, pp. 4, 25-26). The Title to the 1999 Mercedes Benz car and the Lease Agreement both indicated that the registered owner and Lessee, respectively, were "Preferred Produce Maurice Abdalla." Also, Maurice Abdalla signed the Lease Agreement as "VP."

Defendant Phillip Abdalla avers that since the Cooper Defendants had sole control over Defendant Preferred during the relevant times of this case in 2005 and not him, they had the ability and obligation to pay Plaintiff any monies which were due and owing. (Doc. 160-2). Defendant Phillip Abdalla also accuses Cooper Defendants of taking substantial sums of money from Defendant Preferred during 2005 and 2006, and he cites to Ex. J attached to his Affidavit,

Defendant Preferred's General Ledgers.

Defendant Phillip Abdalla also submitted the Affidavit of William Nasser, the long time, *i.e.*, for decades, including the relevant times of this case, former CPA for Cooper Defendants and their companies. In fact, Nasser received a copy of the Agreement executed on August 9, 2005, in which Defendant Maurice Abdalla sold his remaining shares of stock in Defendant Preferred to Cooper Defendants. (*See* copy of the Agreement attached to Maurice's Affidavit, Doc. 162-1, pp. 6-17). Nasser substantiates the averment of Defendant Phillip Abdalla that the Cooper Defendants had total and sole control over Defendant Preferred during the relevant times of this case in 2005 and, that Coopers had control over Preferred's assets and had the ability to pay all the bills. (Doc. 160-3). Nasser avers that since the Cooper Defendants had sole control over Defendant Preferred during the relevant times of this case in 2005, they had the ability and power to pay Plaintiff any monies which were due and owing. (*Id.*). Nasser avers that as of June 30, 2005, Defendant Preferred owed Defendant Phillip Abdalla $114,172,92 and that Preferred issued the following three checks to Phillip to reduce this amount owed to him: $14,298 check on July 6, 2005; $8,183.35 check on July 11, 2005; and $3,173 check on August 10, 2005. Nasser states that Defendant Preferred's 2005 tax return signed by Angela Cooper as President of Preferred showed that these checks to Phillip were not cash distributions or disbursements. (*Id.*).

Further, Nasser avers that Cooper Defendants did not record on Defendant Preferred's books all of the payables due Preferred by the companies owned by Cooper Defendants. Nasser also avers that during 2005, Cooper Defendants made entries on the books of Defendant Preferred and issued checks payable to Coopers' companies for hundreds of thousand of dollars

for seafood allegedly sold by Cooper's companies to Preferred, "but sales of only a small fraction of that amount actually occurred." Nasser further avers that "receivables and payables between Defendant Preferred and [other] companies owned by Cooper Defendants always were skewed in favor of [companies owned by Cooper Defendants] after 2004." (*Id.*).

Finally, Defendant Phillip Abdalla submits the Declaration of his Attorney Lawrence Ludwig who avers that Plaintiff admitted during discovery that "One of the shipments of grapes involved a STEVCO Bill of Lading" and that Plaintiff admitted that the subject grapes were rejected by Giant Foods. (Doc. 162-4).

**IV. DISCUSSION.**

Presently before the Court are Plaintiff's Motion for Summary Judgment (**Doc. 156**) against Abdalla Defendants and the Cooper Defendants' Cross-Motion for Summary Judgment (**Doc. 155**) with respect to Abdalla Defendants' Cross-Claims for indemnity and/or contribution against them (Coopers). As mentioned, Plaintiff only has claims remaining against Abdalla Defendants and these claims are contained in Counts III and V of Plaintiff's Amended Complaint. In Count III, Plaintiff alleges that any personal assets which the Individual Defendants (now only the Abdalla Defendants) commingled with the PACA Trust res held by Defendant Preferred for its (Plaintiff's) benefit constitutes a substituted, resultant trust res for its (Plaintiff's) benefit. Plaintiff's Count V alleges that the Individual Defendants illegally transferred the assets which Defendant Preferred held in trust for it (Plaintiff) under the PACA to themselves or others. Plaintiff demands an accounting and return of all assets which the Individual Defendants acquired with the proceeds they allegedly took from Defendant Preferred when

Plaintiff's grapes were sold.

In their Cross-Motion for Summary Judgment (**Doc. 155**) with respect to Abdalla Defendants' Cross-Claims against Coopers, Cooper Defendants contend that their undisputed evidence shows Phillip Abdalla personally profited from PACA-protected Trust Funds during the relevant time of this case. Cooper Defendants point to the documented payments Abdalla Defendants received from Defendant Preferred in violation of PACA as verified in the Affidavit of Angela Cooper. Cooper Defendants also argue that their evidence shows they did not personally profit from PACA-protected Trust Funds. Cooper Defendants point to the Affidavit of Angela Cooper with the attached Exhibits (Doc. 157) which we have discussed in detail above with respect to Plaintiff's Summary Judgment Motion. Thus, Cooper Defendants maintain that the evidence shows Abdalla Defendants received payments from Defendant Preferred, which were derived from the proceeds of Preferred's sales of produce, in violation of PACA and, that these monies must be disgorged. Additionally, Cooper Defendants contend that they are entitled to summary judgment with respect to Abdalla Defendants' Cross-Claims for indemnity and/or contribution against them since the evidence shows only the Abdallas personally profited from PACA-protected Trust Funds.

At oral argument on July 3, 2012, which was on the record, counsel for the Cooper Defendants submitted that this action has resulted in substantial discovery, which has yielded documentation, including payroll records, ledgers, account statements and tax returns, all of which lead to the conclusion that Defendant Phillip Abdalla was paid approximately $144,918 and Defendant Maurice Abdalla was paid approximately $64,260 from Defendant Preferred during the relevant time period. The Cooper Defendants maintained that these sums have not

been refuted by any party and further asserted that all of the money belongs to Plaintiff through the PACA statutory trust. The Cooper Defendants averred that the remaining claims in this suit all boil down to whether Abdalla Defendants received payments in violation of the PACA trust; Plaintiff and Coopers Defendants submit that they did, and that there are no genuine issues of material fact as to that point. Plaintiff and Coopers Defendants emphatically contend that this is the only real issue in this case.

In response, counsel for Defendant Phillip Abdalla argued that there are indeed genuine issues of material fact remaining in this case. He stated that seven months after the Cooper Defendants bought out Maurice Abdalla from Defendant Preferred, *i.e.*, August 2005, Phillip Abdalla was forced out the company on January 12, 2006, and had no power to resolve the matter with Plaintiff. Counsel for Phillip Abdalla also asserted that this fact is key to this suit because the $31,631.62 Preferred paid to Plaintiff in October 2005 for the sales of Plaintiff's grapes was later returned by Plaintiff to Preferred *via* wire transfer the day after Phillip Abdalla's forced departure from Preferred. Counsel for Defendant Phillip Abdalla additionally put forth several more facts that he found to be disputed, centering around whether Phillip had any control of Defendant Preferred during the relevant times. These facts are detailed above in the averments made by Phillip Abdalla in his Affidavit. (Doc. 160-2).

Defendant Maurice Abdalla's counsel stated that Maurice was in a very different position from the other Defendants in this case, as his role at Preferred involved neither accounting nor produce. Rather, Maurice Abdalla was strictly a salesman during the times relevant to this action. Defendant Maurice Abdalla's attorney argued that Maurice was supposed to be indemnified from Coopers Defendants by virtue of the Indemnity Clause of the August 9, 2005

Maurice Abdalla Stock Sale Agreement, Doc. 162-1, pp. 11-12, that he was never in control of

Defendant Preferred, and that he had no "responsible connection" necessary under PACA to be

held individually liable in this suit. Further, Maurice Abdalla maintains that the payments he

received from Defendant Preferred came through Coopers' Food Service, Inc., and that they

were remitted for car payments and medical benefits as consideration for the Agreement.

These facts are detailed above in the averments made by Maurice Abdalla in his Affidavit. (Doc.

162-1).

Coopers Defendants maintain that ¶ 6. d. of the August 9, 2005 Agreement provides

them with an exception to the Indemnity Clause with respect to Defendant Maurice Abdalla.

Defendant Maurice Abdalla argues (Doc. 167, pp. 3-4) that the Indemnity Clause of the

Agreement is valid and binding, and that he is entitled to indemnity from Cooper Defendants

with respect to Plaintiff's claims in this case seeking to hold him personally liable for Defendant

Preferred's alleged failure to pay Plaintiff for the grapes shipped in July 2005. Defendant

Maurice Abdalla thus contends that the Cross-Motion for Summary Judgment of Cooper

Defendants as against him should be denied.

In *Topp Copy Products, Inc. v. Singletary*, 533 Pa. 468, 471, 626 A.2d 98

(Pa. Supreme Ct. 1993), the Pennsylvania Supreme Court stated:

> It is generally accepted that an exculpatory clause is valid where three
> conditions are met. First, the clause must not contravene public policy.
> Secondly, the contract must be between persons relating entirely to their
> own private affairs and thirdly, each party must be a free bargaining agent
> to the agreement so that the contract is not one of adhesion. *Princeton
> Sportswear Corp. v. H. & M. Associates,* 510 Pa. 189, 507 A.2d 339 (1986);
> *Employers Liability Assurance Corp. v. Greenville Business Men's Association,*
> 423 Pa. 288, 224 A.2d 620 (1966). In *Dilks v. Flohr Chevrolet,* 411 Pa. 425,
> 192 A.2d 682 (1963), we noted that once an exculpatory clause is

determined to be valid, it will, nevertheless, still be unenforceable unless the language of the parties is clear that a person is being relieved of liability for his own acts of negligence. In interpreting such clauses we listed as guiding standards that: 1) the contract language must be construed strictly, since exculpatory language is not favored by the law; 2) the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no inference from words of general import can establish the intent of the parties; 3) the language of the contract must be construed, in cases of ambiguity, against the party seeking immunity from liability; and 4) the burden of establishing the immunity is upon the party invoking protection under the clause. *Dilks,* at 434, 192 A.2d at 687.

"Indemnification clauses are disfavored under Pennsylvania law and a party must meet a high burden before an indemnification clause can be construed to relieve a party for acts it has committed." *American Stores Properties, Inc. v. Spotts, Stevens & McCoy*, 648 F.Supp.2d 700, 706 (E.D. Pa. 2009)(citing *Valhal Corp. v. Sullivan Assoc.*, 44 F.3d 195, 202 (3d Cir. 1995)).

Paragraph 6. d. of the August 9, 2005 Stock Sale Agreement provides:

**No provision of this Indemnification clause is intended nor should be interpreted to waive any and all bars to personal liability to third parties that either Maurice [Abdalla]** or the Company [Preferred and Food Service, Inc.] has, or which the individuals, Angela, John, Paul [Cooper] or Phillip [Abdalla] have, this indemnification providing any rights relating thereto exclusively to the Company, Preferred and Food Service, Inc. and/or the individuals named herein where relevant.

(Doc. 162-1, pp. 11-12)(emphasis added).

The Court agrees entirely with Cooper Defendants that "the Stock Sale Agreement speaks for itself and expressly states that the indemnification language set forth in the other parts of the Agreement does <u>not</u> apply to claims for personal liability asserted against Maurice Abdalla." (Doc. 170, p. 8)(emphasis in original). Also, the Court concurs with Cooper

Defendants that the remaining claims in this case which Plaintiff asserts against both Abdalla Defendants are claims for personal liability against the Abdalla. The Court construes the Indemnification Clause strictly against Maurice Abdalla and resolves all ambiguity in favor of Cooper Defendants. *See American Stores Properties, Inc. v. Spotts, Stevens & McCoy*, 648 F.Supp.2d at 706-07. As such, the Court finds that the indemnification language of the Agreement does not apply to Plaintiff's claims against Defendant Maurice Abdalla in this case and does not preclude entry of judgment in favor of Cooper Defendants as against Maurice with respect to Maurice's Cross-Claims for contribution and/or indemnity against Coopers.

Counsel for Plaintiff West Coast stated that this case centers around one issue: whether the Abdalla Defendants received funds from Defendant Preferred that were derived from the sales of Plaintiff's grapes. Plaintiff submits that the Abdalla Defendants did receive such funds, that those monies were received in violation of the PACA trust, and that they must be returned to the trust. Plaintiff argued that any dispute regarding control of Defendant Preferred are irrelevant to Plaintiff's remaining claims.

As discussed above, Abdalla Defendants have submitted many Exhibits to dispute the evidence of Plaintiff and Coopers Defendants as to whether the payments Abdallas received from Defendant Preferred were in violation of the PACA trust.

In *Pacific Intern. Marketing, Inc. v. A&B Produce, Inc.*, 2007 WL 2253521, *5 (E. D. Pa.), the Court stated:

> "Congress enacted PACA in 1930 to deter unfair business practices and promote financial responsibility in the perishable agricultural goods market." *Weis-Buy Services, Inc. v. Paglia, Jr.*, 411 F.3d 415, 419 (3d Cir.2005) ( *quoting Farley and Calfree, Inc. v. United States Dep't. of Agric.*, 941 F.2d 964, 966 (9th Cir.1991)). "The Act was amended

in 1984 upon a finding by Congress that a burden on commerce in perishable agricultural commodities was caused by certain financial arrangements, whereby dealers would receive goods without having made payment for them. To remedy this burden, Congress provided for a statutory trust on behalf of unpaid suppliers or sellers." *Morris Okun, Inc. v. Harry Zimmerman, Inc.,* 814 F.Supp. 346, 347 (S.D.N.Y.1993). Under PACA, "[c]ommission merchants, dealers and brokers are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities. Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of Section 2 of the Act, 7 U.S.C. § 499(b)". 7 C.F.R. §46.46(d)(1).

The Court in *Pacific Intern. Marketing* held that individual corporate officers may be liable in certain circumstances for breaching their fiduciary duties under the PACA. Specifically, the Court stated:

> The question now before me is whether, under PACA, an individual can be held liable to unpaid sellers for a corporation's debt. The Third Circuit is in accord with the First, Fifth, Seventh, and Ninth Circuits in holding individual corporate officers and shareholders, in certain circumstances, may be held individually liable for breaching their fiduciary duties under PACA. *See Weis-Buy Services, Inc.,* 411 F.3d at 421. *See also Botman International, B.V. v. International Produce Imports, Inc.,* 205 Fed.Appx. 937, 942 (3d Cir.2006). "... PACA liability attaches first to the licensed seller of perishable agricultural commodities. If the seller's assets are insufficient to satisfy the liability, others may be found secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust." *Shepard v. K.B. Fruit & Vegetable, Inc.,* 868 F.Supp. 703, 706 (E.D.Pa.1994). *See also Sunkist Growers, Inc. v. Fisher,* 104 F.3d 280 (9th Cir.1997); *Patterson Frozen Foods, Inc. v. Crown Foods International, Inc.,* 307 F.3d 666 (7th Cir.2002); *Hiller Cranberry Products, Inc. v. Koplovsky,* 165 F.3d 1, 9 (1st Cir.1999). The court in *Shepard* concluded that "the liability determination of individual shareholders should be based on two factors: (1) whether the individuals' involvement with the corporation was sufficient to establish legal responsibility, and (2) whether the individuals, in failing to exercise any appreciable oversight of the corporation's management, breached a fiduciary duty owed to the PACA creditors". *Golman-Hayden Co., Inc. v. Fresh Source Produce, Inc.,* 217 F.3d 348, 350 (5th Cir.2000).

*Id.,* * 5.

In *Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.,* 2008 WL 4710920, *6 (E. D. Pa.), the Court held:

> The cases cited by the Third Circuit have consistently expressed concern that liability only be imposed where involvement with the corporation is sufficient to establish some significant relationship between the individual and the corporation. Only if the plaintiff can demonstrate that such a relationship existed through evidence of active involvement, not simply evidence that the defendant was in a position of control, can the individual be held legally responsible for acting on behalf of the corporation.

The Court has previously found that Plaintiff's claims against Abdalla Defendants (as well as Cooper Defendants) for damages under the PACA resulting from a breach of their fiduciary duties , *i.e.,* Count IV (Individual Liability) of Amended Complaint, were time barred.

With respect to Plaintiff's remaining claims against the Abdalla Defendants in Count III (Resultant Trust) and Count V (Constructive Trust & Disgorgement) of the Amended Complaint the Court in *Weis-Buy Services, Inc. v. Paglia,* 411 F. 3d 415, 423 (3d Cir. 2005), stated:

> We recognize that the trust created by PACA exists until a seller is paid, 7 U.S.C. § 499e(c)(2), and "[p]articipants who preserve their rights to benefits ... remain beneficiaries until they are paid in full," 7 C.F.R. 46.46(c)(2). However, when Sellers are not suing to enforce the trust obligations or to preserve their shares of the trust *res,* but instead are suing the trustee in tort for damages resulting from a breach of his fiduciary duties, we believe that the statute of limitations must accrue from the time that the trustee openly repudiates those duties. FN4
>
> > FN4. We emphasize that the statute of limitations applies to actions against the trustee for breach of fiduciary duty.

As the *Weis-Buy* Court noted, "the statute of limitations applies to actions against the trustee for breach of fiduciary duty." *Id.* at n. 4. Since our Plaintiff is also suing the Abdalla

Defendants to preserve its shares in the trust res (Count III) and to require Defendants to hold all assets they received from Defendant Preferred in constructive trust (Count V), the Court has previously found that these claims of Plaintiff were not time barred. Also, the Court did not find that Plaintiff's claims against Abdalla Defendants in Counts III and V were remedies only imposed based on their alleged breach of their fiduciary duties under PACA. Thus, as Plaintiff points out any disputes regarding control of Defendant Preferred during the time in question are irrelevant to Plaintiff's remaining claims.

The *Weis-Buy* Court stated, "the trust created by PACA exists until a seller is paid" and, that "participants who preserve their rights to benefits ... remain beneficiaries until they are paid in full." *Id*. at 423. In Counts III and V of its Amended Complaint, Plaintiff is suing Abdalla Defendants to enforce their trust obligations and to preserve its shares of the trust res. The Court in its prior rulings did not find that Plaintiff's claims against Abdalla Defendants in Counts III and V were only based on their alleged breach of fiduciary duties. Plaintiff's claims in Count III and V allege Abdalla Defendants' participation in wrongful acts, namely, by commingling assets of the PACA trust res with their own personal assets and by using PACA trust assets for their own benefit (Count III), and by improperly and illegally transferring property and assets which Defendant Preferred held in trust under PACA to itself or others (Count V). Thus, the Court previously found that Plaintiff's Counts III and V against Abdalla Defendants asserted claims to enforce trust obligations and to preserve shares of the trust res, and that they were separate and distinct from Plaintiff's claims against these Defendants in Count IV for damages due to their alleged breach of their fiduciary duties under PACA.

In *Bear Mtn. Orchards, Inc. v. Mich-Kim, Inc.*, 2008 WL 4710920, *5 (E.D. Pa.), the

34

Court quoted from an earlier case and stated, "PACA liability attaches first to licensed seller of perishable agricultural commodities. If the seller's assets are insufficient to satisfy liability, others may be found secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust. *Shepard v. K.B. Fruit & Vegetable, Inc.*, 868 F.Supp. 703, 706 (E.D. Pa.1994)." Thus, even though the Court has entered Default Judgment in Plaintiff's favor and against Defendant Preferred, Defendant Preferred's assets are not sufficient to satisfy PACA liability. Therefore, Abdalla Defendants may be held liable to disgorge the payments they received from assets which Defendant Preferred held in trust for Plaintiff under PACA.

In *Baiardi Food Chain v. U.S.*, 482 F. 3d 238, 241 (3d Cir. 2007), the Court stated that "Congress amended the PACA in 1984 to add a section providing for a statutory trust to benefit unpaid suppliers of fresh produce. 7 U.S.C. § 499e(c)."

The *Baiardi Food Chain* Court also stated:

> The trust consists of the perishable agricultural commodities received, all inventories of food or other products derived from the perishable commodities received, and any receivables or proceeds from the sale of such commodities or products. The trust holds all proceeds and receivables from the sale of produce by a dealer until the dealer pays the seller the full purchase price. 7 U.S.C. § 499e(c). The trust thus provides an additional remedy for sellers against a buyer failing to make prompt payment. *Idahoan Fresh*, 157 F.3d at 199 (citing H.R.Rep. No. 98-543, at 2 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 405, 406). "Prior to this amendment, unpaid produce suppliers were unsecured creditors vulnerable to the buyers' practice of granting other creditors a security interest in their inventory and accounts receivable." *Id.* (citing *Tom Lange Co. v. Lombardo Fruit & Produce Co. (In re Lombardo Fruit & Produce Co.)*, 12 F.3d 806, 808-09 (8th Cir.1994)).
>
> Section 2 of the PACA imposes several strict requirements on regulated buyers and sellers. As stated above, section 2(4) mandates that all regulated parties "make full payment promptly" for all produce purchases. 7 U.S.C. § 499b(4). By regulation promulgated by the Secretary of Agriculture,

"full payment promptly" requires that produce buyers make payment within ten days of the date on which the produce is accepted, unless otherwise expressly agreed in writing by the parties to the sale prior to the time of the transaction. 7 C.F.R. §§ 46.2(aa)(5), (11). Regulated parties must adhere to the "full payment promptly" provisions of the PACA to keep the transaction under the provisions of the trust. However, the regulations permit the parties to agree in writing before the transaction to other payment periods that do not exceed thirty days and still remain under the trust. 7 C.F.R. § 46.46(e)(2).

*Id*. at 241-42.

In *Edward G. Rahll & Sons, Inc. v. Zach*, 2008 WL 2944672, *1 (M.D. Pa.), the Court stated, "the [PACA], 7 U.S.C. § 499e(c)(2), imposes a statutory floating trust on all perishable agricultural commodities and on all receivables or proceeds derived from the sale thereof," and that "unpaid sellers may receive equitable enforcement of the trust upon an evidentiary showing that (1) 'the trust is being depleted' and (2) 'the likelihood is great that there will be no fund available to satisfy a legal judgment against the delinquent buyer.'"

The *Edward G. Rahll & Sons* Court noted that, "PACA requires seller-beneficiaries to preserve their interest in the trust corpus either by providing written notice of their intent to enforce trust benefits after a buyer fails to remit payment for produce, *see* 7 U.S.C.§ 499e(c)(3), or by notifying buyers of the existence of the trust via the sellers' "usual billing or invoice statements," *Id*. § 499e(c)(4)." *Id*., n. 1.

In the present case, there is no dispute that Plaintiff notified Defendant Preferred of the existence of the trust through its three Invoices.

Plaintiff contends that the affirmative acts of Abdalla Defendants alleged in Counts III and V of its Amended Complaint constituted continual unlawful acts since Plaintiff preserved its interest in the trust *via* its Invoices, since the trust under the PACA still exists, since Plaintiff avers

36

that Abdalla Defendants commingled trust assets with their own assets and, since Plaintiff has not yet been paid for its grapes. *See Botman Intern., B.V. v. Intern. Produce Imports, Inc.*, 2006 WL 263619, *4 (E. D. Pa.)("The PACA statute was enacted to protect sellers of perishable produce and to ensure payment of the goods they deliver.")(citing *Weis-Buy*, 411 F. 3d at 420).

In the instant case, as detailed above, for present purposes,[13] the Court finds that even though the facts are disputed as to whether Abdalla Defendants were in control of and actively involved in Defendant Preferred during all of the relevant times, and as to whether Abdalla Defendants were in control of the PACA trust assets of Defendant Preferred during these times, these facts are not relevant to Plaintiff's remaining claims. As Plaintiff repeatedly points out, "[t]he only issues remaining in this action are whether and how much money [Abdalla] Defendants received from the assets held in trust under the PACA by [Defendant Preferred]." (Doc. 164, pp. 3-4).

The Court finds it undisputed that Abdalla Defendants were paid monies by Defendant Preferred during the relevant times of this case, namely, Preferred paid $119,264.00 (as discussed below) to Defendant Phillip Abdalla and paid $64,260.00 to Defendant Maurice Abdalla from PACA trust assets. The Court finds it undisputed that this money was all derived from the proceeds of Preferred's sales of produce.

As stated, Phillip Abdalla submitted the Affidavit of CPA Nasser who was the accountant for Cooper Defendants and their companies for "decades," including the relevant times of this case. Nasser avers that as of June 30, 2005, Defendant Preferred owed Defendant Phillip

---

[13]As in *Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.*, we are dealing with summary judgment motions.

Abdalla $114,172,92 and that Preferred issued the following three checks to Phillip to reduce

this amount owed to him: $14,298 check on July 6, 2005; $8,183.35 check on July 11, 2005;

and $3,173 check on August 10, 2005. Nasser avers that the three checks Phillip received in

July and August 2005, as detailed by Angela Cooper in her Affidavit (Doc. 157), were payments

toward "an aggregate payable" Defendant Preferred owed him and were not "cash

disbursements" or "cash distribution." (Doc. 160-3). Nasser also accuses Cooper Defendants of

failing to record in Defendant Preferred's books and records all of the payables due Preferred by

the various companies owned by Cooper Defendants. Also, Nasser accuses Cooper Defendants

of making entries in Defendant Preferred's books and cutting checks from Preferred's account

payable to Coopers' companies during 2005 "for hundreds of thousands of dollars for seafood"

sold by Coopers' companies to Preferred when in fact, "sales of only a small fraction of that

amount actually occurred." (*Id.*). Notwithstanding the averments of Nasser, the Court finds

that the funds in Defendant Preferred's account which were used to pay Abdalla Defendants

during 2005, except for the three checks detailed below which Preferred issued to Phillip

Abdalla, were derived from the sales of produce by Preferred as evidenced by Angela Cooper's

Affidavit. (Doc. 157, p. 2). Thus, Abdalla Defendants are nonetheless obliged to return to

Plaintiff the PACA trust assets they received in the amounts discussed below.


As mentioned, Nasser avers that as of June 30, 2005, Defendant Preferred owed

Defendant Phillip Abdalla $114,172.92 and that Preferred issued the following three checks to

Phillip to reduce this amount owed to Phillip: $14,298 check on July 6, 2005; $8,183.35 check

on July 11, 2005; and $3,173 check on August 10, 2005. The Court finds that Phillip Abdalla

has sufficiently shown that the monies he received from these three payments were not derived from the assets Preferred held in trust after the sale of Plaintiff's grapes. Plaintiff has not disputed Nasser's contention regarding the three stated checks. Upon subtracting these three payments from the $144,918.35 which Preferred paid to Phillip during the relevant time of this case, $119,264 remains. Thus, the Court finds that the amount of $119,264 which Preferred paid to Phillip Abdalla during the relevant times of this case were derived from the sales of produce by Preferred and were part of the PACA trust held for Plaintiff's benefit. The Court finds that the amount of $64,260 which Preferred paid to Maurice Abdalla were derived from the sales of produce by Preferred and were part of the PACA trust held for Plaintiff's benefit.

Further, Phillip Abdalla states that he complained to Plaintiff about the quality of the grapes and about the fact that Giant Foods rejected some of the grapes. Phillip Abdalla states that he consulted the USDA, he remitted in October 2005, net proceeds of the sales of the grapes to Plaintiff in three checks totaling the amount of $31,631.62, and that Plaintiff deposited the checks when it received them. Plaintiff then complained to USDA that it was not satisfied with the amount Defendant Preferred sent it, and on January 13, 2006, Plaintiff wired transferred the amount of $31,631.62 back to Preferred. Angela Cooper then held the money in escrow. As mentioned, it is not disputed that Defendant Maurice Abdalla had no further involvement with Defendant Preferred as of August 9, 2005, and that on January 6, 2006, Cooper Defendants had bought all of his remaining shares in Preferred which was before Plaintiff wired the $31,631.62 it received from the sales of its grapes back to Preferred. Regardless of these facts, the Court agrees with Plaintiff (Doc. 164, p. 4) that there is no dispute it returned the money in the amount of $31,631.62 to Defendant Preferred "within 90 days of

its deposit in November, 2005." (See also Doc. 89-2, p. 2).

In *Glover v. Sunnyboy Produce Co., Inc.*, 2001 WL 1807404, *2 (Pa.Com.Pl. October 30, 2001), the Court stated, "accord and satisfaction is an affirmative defense, therefore burden is on defendant to establish each element thereof. These elements are: 1) a disputed debt; 2) a clear and unequivocal offer of payment in full satisfaction; and 3) **acceptance and retention of payment by the offeree**. *PNC Bank, Nat. Ass'n v. Balsamo,* 430 Pa.Super. 360, 380, 634 A.2d 645, 655 (1993)." (Emphasis added). Thus, the Court agrees with Plaintiff that there is no merit to the defense asserted by Defendant Phillip Abdalla of accord and satisfaction since it is not disputed that Plaintiff timely returned the money to Defendant Preferred in early January, 2006.

Also, Plaintiff point to the Declaration of its Attorney attached to its Motion for Default against Defendant Preferred to show that the three shipments of grapes it sent to Preferred were of top quality, "U.S. No. 1," with almost no decay present. (Doc. 89-2, p. 2). Counsel for Plaintiff attached the USDA Inspection Certificates for the grapes Plaintiff sent Defendant Preferred and they substantiate his averments as to the quality of the grapes. (Doc. 89-2, pp. 12-13).

Finally, the Court considers Abdalla Defendants' Cross-Claims against Cooper Defendants for contribution and/or indemnity and the Cross-Motion for Summary Judgment of Cooper Defendants with respect to these cross-claims.

In *Amco Ins. Co. v. Varish Const., Inc.*, 2010 WL 3239395, *2-*3 (M.D. Pa. 7-15-10), the Court stated:

> Under Pennsylvania law, the right of contribution is governed by the Uniform Contribution Among Tortfeasors Act, 42 Pa.C.S.A. § 8321-8327. Contribution applies when the parties are joint tortfeasors. *Kirschbaum v.*

40

*WRGSB Assocs.,* 243 F.3d 145, 156 (3d Cir.2001). "Under the Act, joint tortfeasors are entitled to contribution if they have paid more than their pro rata share of a common liability." *Rabatin v. Columbus Lines, Inc.,* 790 F.2d 22, 24 (3d Cir.1986). The Act defines joint tortfeasors as "two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." 42 Pa.C.S.A. § 8322. "Under Pennsylvania law, two actors are joint tortfeasors if their conduct 'causes a single harm which cannot be apportioned ... even though [the actors] may have acted independently.' " *Rabatin, supra,* 790 F.2d at 25 (quoting *Capone v. Donovan,* 332 Pa.Super. 185, 480 A.2d 1249, 1251 (Pa.Super.Ct.1984)).

Contribution "is an equitable right based on a common liability to the plaintiff.' " *Walton v. Avco Corp.,* 530 Pa. 568, 610 A.2d 454, 461 (Pa.1992) (quoting *John W. Brown, Jr. Equipment Rental Corp. v. Dickey,* 397 Pa. 454, 155 A.2d 836, 838 (Pa.1959)). Contribution "is not a recovery for the tort, but rather it is the enforcement of an equitable duty to share liability for the wrong done by both [tortfeasors]." *Swartz v. Sunderland,* 403 Pa. 222, 169 A.2d 289, 290 (Pa.1961).

"Indemnification is 'a fault shifting mechanism.' " *Sovereign Bank v. BJ's Wholesale Club, Inc.,* 533 F.3d 162, 174 (3d Cir.2008) (quoting *Sirianni v. Nugent Bros., Inc.,* 509 Pa. 564, 506 A.2d 868, 871 (Pa.1986)). Indemnity " 'shifts the entire loss from one tortfeasor who has been compelled to pay it to the shoulders of another who should bear it instead.' " *Walton, supra,* 610 A.2d at 460(quoting W. Prosser, *Law of Torts* at 310 (4th ed.1979)). Indemnity may be based either on a contractual provision or on the common law right of indemnification. The common law "right of indemnification arises when there is a 'difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party.' " *Kirschbaum, supra,* 243 F.3d at 156 (quoting *Builders Supply Co. v. McCabe,* 366 Pa. 322, 77 A.2d 368, 370 (Pa.1951)). "It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." *Builders Supply Co. v. McCabe,* 366 Pa. 322, 77 A.2d 368, 370 (Pa.1951)) "[S]econdary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible." *Id.* "In the case of *concurrent* or *joint* tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities

41

everywhere that no right of indemnity exists on behalf of either against the other; in such a case, there is only a common liability and not a primary and secondary one, even though one may have been very much more negligent that the other." *Id.*

"Thus, unlike comparative negligence or contribution, the common law right of indemnity is not a fault sharing mechanism between one who was predominantly responsible for an accident and one whose negligence was relatively minor." *Sirianni v. Nugent Bros., Inc.,* 509 Pa. 564, 506 A.2d 868, 871 (Pa.1986). "Rather, it is a fault shifting mechanism, operable only when a defendant who has been held liable to a plaintiff solely by operation of law, seeks to recover his loss from a defendant who was actually responsible for the accident which occasioned the loss." *Id.* Common law indemnity is not available to a party that had any part in causing the injury. *MIIX Ins. Co. v. Epstein,* 937 A.2d 469, 472 (Pa.Super.Ct.2007).

The Court agrees with Cooper Defendants that there is no evidence they combined with Abdalla Defendants to produce Plaintiff's injury in this case. (Doc. 170, p. 9). Also, the evidence shows that Abdalla Defendants have not discharged their liability to Plaintiff by paying more than their pro rata share of damages to Plaintiff. Further, as Cooper Defendants point out, the undisputed Affidavit of Angela Cooper with attached records show "the Abdalla Defendants unquestionably received from [Defendant] Preferred combined payments totaling more than $200,000 (more than twice the principal amount of West Coats's claim) during the time of the acts complained of and during the time that Preferred had outstanding PACA claims to be paid." (*Id.*, pp. 9-10). As stated above, the Court finds that Defendant Phillip Abdalla received payments from Defendant Preferred in the amount of $119,264.00 and Defendant Maurice Abdalla received payments in the amount of $64,260.00 during the relevant time of this case which consisted of PACA trust assets held for Plaintiff's benefit. Thus, the Court concurs with Cooper Defendants that they are entitled to summary judgment with respect to the Cross-Claims of Abdalla Defendants for contribution against them (the Coopers).

The Court also agrees with Cooper Defendants that they are entitled to summary judgment with respect to the Cross-Claims of Abdalla Defendants for indemnity against them (the Coopers). As stated by Cooper Defendants, "in order for the Abdalla Defendants to have a valid claim for indemnity, they must be able to convince this Court that they were somehow compelled by reason of some legal obligation to pay damages occasioned by the initial negligence of [the Cooper Defendants] for which they (the Abdalla Defendants) were only secondarily liable." (*Id.*, p. 11)(emphasis original). As discussed above, the Court has found that the proceeds from the sales of Plaintiff's grapes which Defendant Preferred received, which form the basis of Plaintiff's remaining claims, were undisputably paid to Abdalla Defendants and not to Cooper Defendants. Thus, the Court finds that Abdalla Defendants are directly and primarily liable to Plaintiff under the PACA, and not secondarily liable to Plaintiff. The Court has found the undisputed evidence to show that the amount of $119,264.00 Defendant Preferred paid to Defendant Phillip Abdalla and the amount of $64,260.00 Defendant Preferred paid to Defendant Maurice Abdalla were personal payments to them from monies that were held in the PACA trust funds. As such, the Court agrees with Cooper Defendants that "if the Abdalla Defendants are forced to disgorge said payments to Plaintiff west Coast, ... , it is clear that such disgorgement cannot support a claim for indemnity against the Cooper Defendants." (*Id.*, p. 12).

Therefore, the Court concurs with Cooper Defendants that they are entitled to summary judgment with respect to all of the Cross-Claims of Abdalla Defendants against them (the Coopers).

## VI.    CONCLUSION.

Based on the above detailed evidence presented in this case, the Court finds no material disputed facts regarding the remaining claims of Plaintiff against Abdalla Defendants, *i.e.*, Counts III and V of Plaintiff's Amended Complaint. The Court finds that summary judgment is appropriate in this case for Plaintiff. The Court also find that Cooper Defendants are entitled to summary judgment with respect to Abdalla Defendants' Cross-Claims against them (the Coopers) for contribution and/or indemnity. As such, the Court will grant Plaintiff's Motion for Summary Judgment (**Doc. 156**) as well as Cooper Defendants' Cross-Motion for Summary Judgment (**Doc. 155**) against Abdalla Defendants.

An appropriate Order and Judgment shall be issued.


s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: March 13, 2013**